The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case 421-0351, People of the State of Illinois v. Michael Brian Brown. Would counsel for the appellant please state your name for the record? John Burfell. John Burfell, is that the right pronunciation? Correct, Your Honor. Thank you. And for the appellate? James Ryan Williams. Thank you, counsel. The appellant may proceed. May it please the court. John Burfell for Michael Brown. Mr. Brown was convicted on two counts of first degree murder and one count of aggravated battery. There are two issues in this case. The first issue is whether Mr. Brown received the reasonable assistance of counsel during second stage proceedings. And the second issue is whether, despite what we think was unreasonable representation, whether he nevertheless made a substantial showing that trial counsel was ineffective for misadvising regarding the penalties he faced. Now, I just want to clarify one thing at the outset of this argument. We're actually asking for relief on both counts, which is to say we believe this court should order an evidentiary hearing on the second issue, but also remand the matter for the first issue for second stage proceedings. And the reason for that is we already know how the trial court is going to rule on the second issue. And so if this court sends the case back for a second stage hearing, but doesn't reserve the second issue for an evidentiary hearing, or at least rule on it one way or the other, we're going to end up back here on the same facts for the same reasons. So turning to the issues themselves, I want to talk about the second issue first, and then I'll move on to the first issue. Now, the second issue is pretty straightforward. The question is whether the amended petition made a substantial showing that trial counsel was ineffective for misadvising the defendant regarding the penalties he faced. And but for that misadvisement, the defendant would have requested a second degree murder instruction. Now, there isn't really a dispute as to whether trial counsel was deficient in this case. There's a letter attached to the amended petition. It was attached to the pro se petition. It basically establishes that trial counsel didn't understand the penalties that Mr. Brown faced at trial. The question really is whether Mr. Brown was prejudiced by that error. And the state contends that Mr. Brown, although he appeared, he would have accepted the trial court's invitation for a second degree murder instruction. That is not convincing to the state because Mr. Brown knew he was facing at a minimum 45 years in prison, which the state considers to be a de facto life sentence. Well, I think that there's really three things to consider about there. And the first and probably the most important is this is simply not the stage of the proceedings to make a credibility determination. If the defendant makes an agreement, which is assumed to be true at this particular stage, that should advance to a third stage evidentiary hearing. And is at that point, the state can go ahead and try to attack his credibility. But I think two other points are worth making. You know, life doesn't end at the age of 75. And if a defendant believes that he could be released at 75, the defendant can still believe that there is going to be meaningful years left outside of prison. Five, 10, 15 years. It's not unreasonable for a defendant to have believed that. But if a defendant believes that they're going to get mandatory life in prison, there's no hope of release, no matter how old the defendant ultimately becomes. And so it's reasonable for a person to think that, you know, yes, I might get 45 years, but yes, I might spend a substantial amount of time outside of prison with my family or friends or whoever. And I think finally, you know, in this court's order for remand, it said trial counsel could have reasonably given the defendant different advice had trial counsel understood the actual penalties the defendant faced. And here, you know, it would be wholly unreasonable, I think, for this court to say trial counsel, competent counsel could have made a different strategic decision, but the defendant can't. And so if it's reasonable for trial counsel to have maybe thought of something differently if he had known the actual penalties that the defendant faced, then it's reasonable for the defendant to make that same decision. Now the other question is whether the evidence is closely balanced. And I think that the record on that point is very clear. You know, this court has looked at the evidence, two separate times and two different appeals, and it has found that the evidence as to the initial aggressor was ambiguous. It said that, and it said the word ambiguous in its first decision. And, you know, the record bears that out. The jury deliberated for two days. It asked a question. And its question, I think, is indicative of its belief that the defendant was acting in self-defense. The question was, does the initial aggressor have to try to retreat before the initial aggressor can act lawfully in self-defense. Ultimately, the court gave an instruction on that. That's been an issue of litigation. But the point is that the jury made a question, asked the question in a way after a long deliberation to suggest that it thought that the defendant was acting in self-defense, that he did intend to act in self-defense, but it wanted to know if that was legally permissible. Well, the implication from that question, I think, establishes that the jury would have found the defendant guilty of second-degree murder had that instruction been given. And, of course, we don't need to show that the jury would have come to that conclusion. We just need to show a reasonable probability that the result would have been different. And I think that, you know, the testimony in this case, this court's prior findings that the evidence was closely balanced, the jury's question, the time it took to deliberate, I think all of that should lead this court to conclude that there is a reasonable probability the result would have been different had the jury instruction been given. And I do think that it is not appropriate at this stage to question the defendant's averement that he would have requested the instruction had he been appropriately advised. Now, turning to the first issue. The first issue concerns the reasonableness of post-conviction counsel's representation. And, you know, we allege that post-conviction counsel, that both of the attorneys were unreasonable for several reasons. That they didn't know the law, that they amended the petition to add new claims without properly placing them in the correct legal form, and that neither of them raised an Aguilar claim that was apparent on the face of the record. Now, there's a lot of moving parts here in subclaims, and I think they're all important, but I want to highlight two specific claims, and that's the Aguilar claim and the subclaim that neither attorney put all the claims in the proper legal form. So, the Aguilar claim is pretty straightforward. The defendant was impeached with an Aguilar conviction during his testimony. This case was about the defendant's testimony. The jury had to weigh his testimony that he was acting in self-defense against the state's evidence that he wasn't, and this court has already said that there is evidence to support the defendant's narrative of the events. So, ultimately, what the jury had to do is determine whether he was credible. The state introduced his Aguilar conviction during cross-examination, and the jury was instructed at the close of evidence that it had to consider convictions as part of its evaluation of the witness's credibility, and also the state did highlight the fact that this gun in this case was illegal, but it was only really illegal because the defendant had a prior conviction. So, I think that it's unquestionable that the defendant was impeached with this prior Aguilar conviction, but I'm sorry, was there a question? Okay, I'll continue. I think it's clear that the defendant was impeached with this Aguilar conviction, but nobody has done anything to this point about it, and that's probably because the law was pretty murky after McFadden was decided, but six months before the amended petition was filed by the first post-conviction attorney, our Supreme Court decided in re-engi, and it said that no facially invalid, facially unconstitutional conviction can be used for any purpose against the defendant, and so in this case what we have is a facially unconstitutional Aguilar conviction that was used against the defendant. In other words, the jury was told, don't believe this defendant's testimony, he's a bad person because he has a conviction, but in fact, his conviction was for lawfully constitutionally protected conduct, and that's a pretty big due process violation. Now, why is that something that the attorney should have done here, should have handled here? Well, in this day and age, I think any competent attorney, any competent attorney in Illinois, given how well publicized the law is on Aguilar convictions, has to take a critical look at UUW convictions, and here we have an attorney who, the first attorney raised a new issue, raised two new issues, both of which would have required that attorney to read the entire record to evaluate whether those new issues stated prejudice. The attorney also filed a 651C certificate stating that he had read the entire record, so there's no way that this attorney could have seen this record without seeing the unconstitutional Aguilar conviction, but the attorney didn't add it to the petition. And I think that the error was compounded by the fact that second post-conviction counsel, reconsideration motion counsel, didn't add it to the motion to reconsider, the amended motion to reconsider, despite the fact that she, too, added a new claim, and that new claim also required that she read all of the evidence, and she filed a 651C certificate that stated that she read the record, and despite that, she didn't add this Aguilar claim, even though she was in the courtroom while he was alleging that the claim, that the conviction was unconstitutional, so both attorneys missed this issue, just flat out missed it. But this court has already ruled in People v. Jennings that an attorney who reviews the record and sees an error must raise that error if that error is consistent with the objectives of the post-conviction defendant, okay? And here, the pro se petition requested a new trial, and this particular due process error would have resulted in a new trial, so we believe under People v. Jennings, both attorneys had a duty to raise this error during the post-conviction proceedings. In short, what we think what Jennings requires is that reasonable counsel is not required to look for errors, but reasonable counsel cannot overlook errors when they are apparent on the face of the record. As for the other primary subclaim that I want to focus on, there's this Brady ineffective assistance to counsel claim, and the Brady claim was added by first post-conviction counsel, and essentially post-conviction counsel said, look, the state failed to turn over a bunch of medical records from the surviving complaining witness LeVar Walls, and those medical records would have impeached Walls. But the attorney didn't add any affidavits or reports, didn't explain why the attorney believed that these medical records existed, the attorney didn't explain how they would have impeached LeVar Walls, and the attorney didn't argue or even assert that the state was culpable or even negligent or just inadvertently suppressed this evidence, all of which were essential elements to raise the claim in a second stage proceeding. Worse than that, when the state finally pointed out that there was a pretrial discovery report that indicated that those records were in fact turned over, during the motion hearing, the attorney has all but admitted that he didn't know that that pretrial discovery report was tendered. In other words, the attorney didn't actually read the record. I think that the issue was compounded by the fact that second post-conviction counsel, really reconsideration counsel, continued the Brady claim by arguing, well, yeah, I guess some of that stuff was tendered, but there were other things that were tendered, and she ended up making the same error. She didn't explain what other things were tendered, why she had a basis for believing that, she didn't attach any affidavits or records to the amended motion to reconsider. In essence, she didn't put the, I guess, residual Brady claim in any kind of proper legal form. And then she added yet another new claim that was not fully supported by the record. She argued that trial counsel was ineffective for failing to introduce the medical records that were tendered. But she didn't attach those medical records or provide an affidavit from trial counsel or LaVar Walls or anybody else who might have known what those records were. She made some vague allegation in the body of the amended motion that they would have impeached LaVar Walls' testimony with regards to how he was standing when he was shot, but that wasn't backed up by anything that would have been verifiable or would have warranted a third stage evidentiary hearing. In other words, she made exactly the same error. She did not place claims in the proper legal form. And so, you know... Counsel, may I ask, are you saying that if these were in the proper legal form, that they would be viable post-conviction issues? There's certainly no way for us to assess that at this particular stage because we don't have the medical records. So is there any way for us to assess prejudice? I think that the Illinois Supreme Court has been crystal clear in Suarez that prejudice is not relevant to post-conviction claims of unreasonable assistance of counsel. And I think that this case exemplifies why that is sound policy. You know, he gets one chance at a post-conviction petition. Everything else has to be done successive. And it's hard to file to meet the cause and prejudice standard. And what we have is an incomplete record, but a hint, a hint that there's something in there that could be relevant to the complaining witnesses testimony in what is a closely balanced case. So, no, I don't think that there's anything in this record that could allow this court to make a decision based on prejudice, but I don't believe that prejudice is relevant to the analysis. And I think this again, this case exemplifies exactly why. And you know what, this court and people be knowing stated that almost directly that if a post-conviction attorney who doesn't have to add a new claim but chooses to do so, then that attorney has to put that claim in the proper legal form. And if that attorney doesn't do so, then the defendant has been denied their 651C right to the reasonable assistance of counsel. And I'll note, but I won't harp on it if this court wishes. Well, I won't talk about last week's decisions at all. Okay, so that, you know, our belief is that the medical records claim was never ever placed in the proper legal form. And despite the fact that both attorneys felt the need to amend everything, the initial petition and then the motion to reconsider to raise new claims regarding those documents, we think that's further evidence that they were unreasonable. I'm happy to answer any other questions that this court may have regarding any of those issues or any of the sub issues, but I'll otherwise rest on the briefs and reserve the remainder of my time for rebuttal. Counsel, I have a question, and I may have misunderstood what you said, but I think you said something like we know how the court would rule on, I think you said the second issue. So we need to consider and rule on both issues. Otherwise, we're just going to be back here again. Would you clarify that for me? Yes, Your Honor, I think there may be our concern with just remanding this matter for second stage proceedings without touching upon the sufficiency of the claim as it regards to a third stage evidentiary hearing on the second degree murder instruction claim. Okay. You know, the trial court has already ruled that that claim is barred by res judicata and that the defendant could not have made a strategic decision to pursue a second degree murder defense because he made a strategic decision to pursue an all or nothing defense. Well, this court addressed the strategic decision in its order to remand saying it does not believe anybody could make a strategic decision based on inaccurate information regarding the sentence. And this claim is clearly not barred by res judicata. It's based on a private conversation that occurred between the defendant and the attorney that could not have been raised in the direct appeal. But my concern is that the trial court has already manifested its intent to dismiss and it may consider if this goes back for second stage proceedings, the court's going to maybe consider new claims or better formed claims that weren't previously put in the proper legal form. But it's going to stand on its prior decision with regards to the defendant's assertion that he would have requested a second degree murder instruction had he been properly advised of the penalties. Why would he do that? Because he's just so attached to the authorship of his earlier decision that he won't take into account what the court has said? What this court has said? Well, that decision dismissing the second stage petition was entered after this court's remand. So the court presumably took in this court's order remanding for second stage proceedings, but nevertheless decided that this was a strategic decision and the claim was barred by res judicata. And I think if this court doesn't address that, or even discuss that ground for dismissal in this upcoming decision, the court's just going to say, nothing about the order remanding for new second stage proceedings has any relevancy to my prior decision that this second degree murder instruction claim is frivolous. I understand your point, but it also presumes that the trial court is going to do something that we don't know what it's going to do. I mean, I understand your point, but I don't know that the judge is wedded to what he's previously decided, or he may wake up and understand that this isn't res judicata. Why are we deciding that when he ought to have the first shot at it? I understand you're going to say, well, he's already had a couple shots at it. Nothing happened. But why isn't this for the trial court to try to fix before we intervene? Well, you know, if this court wishes just to remand for second stage proceedings. Well, I know we can do that. Yeah, there are plenty of cases where the appellate court does say, because the issue is likely to come up during renewed proceedings, we'll also just weigh in. I don't think that there's any additional evidence that could be really presented on this one matter. It's been pretty, you know, despite the fact that we believe counsel was unreasonable for a bevy of reasons, at least this one claim, this one discrete claim, has probably been presented about as well as it could be. And the court's ruled on it, and then it ruled on it again in a motion to reconsider. So I'm not sure that there's much more that's going to sway the trial court on this one particular matter. Thank you, counsel. We'll hear from the Honorable Buttle. Mr. Williams? Thank you, Your Honor. May it please the court? Counsel, my name is James Ryan Williams, and it's a privilege to represent the state before this honorable court. I will go ahead and start with the Aguilar claim. You know, the basic complaint here is that post-conviction counsel failed to discover and raise this new claim. Defendant recognizes that counsel is not required to comb the record for the new claim, but he contends that this was so apparent that failing to discover it and raise it constituted unreasonable assistance. And reaching that decision, the defense relies on the decision of People v. Jennings. But there, this court wrote that the post-conviction, the claim was effectively raised in the petition, whereas here the claim is not effectively raised or even arguably raised. Instead, the argument is basically that because of the ineffective assistance of counsel arguments, counsel, post-conviction counsel had a duty to review the entire record, whereupon counsel should have discovered the Aguilar claim. Counsel, if you had read the record, would you have found it? I'd like to think I would, Your Honor. I'm sorry, but I understand what you're saying. And you filed an affidavit that said you read the record. I don't mean you. No, I know what you're saying, Your Honor. So on this point, I mean, really all the state can say is the state's position is that this would have required combing the record. And counsel is obviously not required to comb the record and raise issues that are not presented. And this wasn't even arguably presented by the pro se petition. But we've also got the second counsel who also said they read the record and they don't raise it. There's a difference between, yeah, you don't have to comb the record using every inventive idea you could possibly have, but you're supposed to read the record. I understand, Your Honor. Would you concede that this is something that ought to pop out? Perhaps to some attorneys, but I mean, we are dealing with the reasonable assistance of counsel here. And for counsel to be unreasonable, it have to constitute virtually no representation at all. Well, it is virtually no representation on that issue. I mean, there's no representation or virtually no representation. Does that mean on every single issue that was raised or you have to parse that out? But again, you left out this one that's kind of a no brainer. I'm not going to disagree with that. But again, it's a new issue. True. True. I mean, I'd be labored at that point. So anyhow, that's the state's position on that matter. With respect to the Brady claim related to the medical records, as I understand it, the argument is essentially that this Brady claim was so frivolous that even raising it constituted unreasonable assistance. Now, because, of course, in this case, the state pointed out that the record did indicate that the medical records had been tendered. At that point, then, counsel clarifies that defendant believes that there are other unspecified records that were not disclosed. Now, obviously, counsel could not have amended or, excuse me, appended these records to the petition that are unspecified. Perhaps at that point, one could argue that counsel should have just left the issue alone, amended it out of the — removed it from the petition. But nevertheless, counsel is essentially taking the position there that his client should be believed, and if believed, establishes that there are these unspecified records that were not disclosed. Well, except that if you read the record, you would find out that the primary medical records were disclosed, and in reading the record, you might find support for the contention that, thanks, we got those, but there are others, and this is what we think they are. If you read the record. I mean, unless you read the record, how do you know whether there's anything in there that will support this assertion, which remains vague, I would agree, that there's more stuff you should have given us? Well, in this matter, I mean, counsel did file a 651C certificate, so we're dealing with the presumption that counsel did read the record. Well, we know that they didn't. Well, no, we don't know that they didn't. We know that they, what, that they skimmed it, that they just take it as, yeah, yeah, I read it, I flipped through the pages. I mean, that's supposed to mean something, that they read it. No, I agree. And the presumption here is that they did read it. I mean, the fact that, excuse me, the fact that defendant when confronted with the prospect that the records that were allegedly not tendered were, in fact, tendered, then responded by saying that they, that there were other records, nonspecified records. And my understanding, I mean, my recollection of the briefing, I don't think that anything was specifically pointed out that was, in fact, omitted. So I think, again, we're back in the world of dealing with the presumption that I understand where the defense is coming from, that the quality of the representation here is perhaps suggestive that the record was not thoroughly reviewed. That's very diplomatic, Mr. Williams. I'm sorry. But again, we are dealing with the presumption. And unless defendant can point to something that specifically rebuts that presumption beyond speculation that there's unspecified records, I think that's where we're left. Well, except that the response, oh, yeah, I guess we did get those records, but we think there's other stuff. I mean, that bespeaks a level of ineptitude, just coming back with that kind of response. Oh, yeah, you caught me. I didn't, I didn't catch, I didn't know that. But, yeah, there's, there's this other stuff that they should have disclosed to us. I mean, that's not a good look. I agree, Your Honor. I'm not trying to beat you up, Mr. Williams. Your job is to take the state's position. And I understand that. But it is an adversarial process. Yes. As I too often have to say. Proceed. Thank you, Your Honor. So just moving on to the erroneous sentencing advice that affected the decision with respect to the second degree murder instruction. Now, I normally, you know, as the state, we argue forfeiture in basically every argument, I mean, just to be real. And I normally, it's not something I would waste the court's time with in an oral argument. A lot of times we're arguing it just so that we don't forfeit the argument, right? In this instance, however, I think that forfeiture is something that needs to be seriously considered and I would submit respected in this matter. So when this court remanded this case for further proceedings in 2014, this court found that it was, quote, at least arguable, end quote, that absent counsel's erroneous sentencing advice, the defendant would have requested the second degree murder instruction and the jury arguably would have convicted him of second degree murder. Now, in reaching that instruction, this court specifically wrote, and I quote, we know our findings herein are for the limited purpose of determining whether defendants satisfied the gist standard sufficient to survive a first-stage dismissal. Now, this seems to me like a clear disclosure from this court that it's for, as this court wrote, this limited purpose. Now, despite this, defendant's prejudice argument is really nothing more than arguing that this court has already concluded there is a reasonable likelihood the jury would have only convicted the defendant of second degree murder. Strategically omitting the critically important words, it is at least arguable, and ignoring this court's clear disclosure that the findings are for this limited purpose. And on this point, I will just point out that arguable prejudice is not the same as a substantial showing of prejudice. These are different standards. The first-stage standard is, as this court knows, a very low burden that's meant to determine simply whether or not the defendant is entitled to the assistance of counsel in raising and litigating his post-conviction issues. If arguable prejudice satisfied the second-stage standard, then there's seemingly no reason for the second stage. But here, the defendant treats these as essentially one and the same, and in doing so, essentially altogether fails to submit a prejudice argument. And for that reason, the state's position is that this court should honor forfeiture of this argument. Because, again, there really isn't an argument made here. There's simply a statement from this court that is, I mean, respectfully, it appears strategically taken out of context to omit the critically important words, it is arguable. And then the representation that this court has already found there's a reasonable likelihood. Now, as to the merits of this argument, I'll start with this. It appears to me that the threshold question here with respect to prejudice is really more whether there's a reasonable likelihood that the defendant, in fact, would have requested this instruction. Now, I understand he made the averement that he would have requested the instruction. But I would submit that the record rebutts this averement. Why? Because the defendant, admittedly, was erroneously advised that he was facing a minimum of 45 years. And however unlikely the hope would be that he would actually get that minimum sentence for murdering two people and shooting two others, he nevertheless is erroneously advised that he's facing a minimum of 45 years when, in fact, he's facing mandatory life. So he makes the strategic decision to embrace an all-or-nothing approach based on the concern basically when he's facing a de facto life sentence. And the state's position is that a de facto life sentence versus a mandatory life sentence wouldn't so fundamentally alter this calculus that he suddenly would have abandoned this strategy that he seemingly knowingly embraced. Because there was quite a colloquy afterwards, it seemed as if, frankly, that the trial court almost reading between the lines was perhaps suggesting you should take – accept this instruction. He nevertheless does it, thereby preventing the jury from finding him guilty of a less culpable form of murder and embracing an all-or-nothing approach, find me guilty of first-degree murder or embrace the self-defense theory. So the state's position is that there really isn't a reasonable likelihood, and it's certainly not on this briefing, that the defendant, in fact, would have actually accepted that instruction. And unless the court has further questions, thank you for your time, Your Honor. Thank you, Mr. Williams. Rebuttal? Yes, thank you, Your Honor. I'll address the state's arguments in the order that they were made. I think that, you know, this court's gone over the Aguilar claim pretty extensively. I will note that the state does agree that this was basically a no-brainer claim that should have been raised. And I think that that is quite important to keep in mind. The standard for reasonable assistance to counsel is something, I guess, less than the ineffective assistance standard. But when an attorney is appointed, they're expected to raise claims and represent the defendant. In this case, the attorney essentially didn't do that. And ultimately, the defendant had to come in and file a pro se motion to reconsider just to get the process restarted. And that was after, I think, four or five years of representation by an attorney who ultimately didn't raise any claims that would help the defendant or advance his original pro se claims. Counsel, can I ask you, you stated it nicely when you said that counsel does not need to search the record but shouldn't overlook something in the record. Given that when somebody files their 651 certificate, they've said they read the record. Are we at a place where then any error reflected in the record is expected to be raised? I feel like we might be erasing that, not searching the record. I understand this court's concerns. I think that it's a little bit different than how Your Honor put it. It's not an issue with respect to raise any issue that's in the record after the attorney says they've read the record. I think it's more specific, any no-brainer issue that's also consistent. There's some higher or lower bar depending on how you look at it that's implicit in how you're looking at this. Yeah, it not only has to be a no-brainer issue but it has to be consistent with the defendant's objectives and it has to be in the part of the record that the attorney would have had to have read to raise the original claims or any claim that the attorney actually raised in addition to the original claims. Is there a case law that might outline that kind of distinction or is this it? I think Jennings is the most direct case that we have on that point. Thank you. As for the Brady claim, we're not arguing that this claim is so frivolous that it wasn't worth raising at all. It probably should not have been raised as a Brady claim. But there's perhaps something to these medical records. We just don't know. They're not in the record. Nobody ever attached them. Both attorneys have probably had some kind of private conversation that led them to believe that this was meritorious but struggled to actually present the claim in a way that was meritorious. I don't agree with the state that we're saying that it was so frivolous. It just didn't warrant being raised. I think we're saying that it was never raised correctly. Just because it was implicated by the state, I do want to note that there's a case that this court released last week that is on point. I'm happy to argue in supplemental briefing if the court reads the case and finds it to be needed. The case is People v. Williams, 2022, ILAP 4th, 210739-U. It was decided six days ago. In that case, the post-conviction attorney basically made the exact same assertion that the state suggests that post-conviction counsel should have made here. Maybe there were other claims out there, and we don't know what those were, and we can't produce the evidence. That claim should advance to a third-stage hearing so that the defendant can go ahead and present their argument. In Willis, the same situation was presented, but instead of a new claim, it was a claim of culpable negligence. Essentially, the attorney said, I don't have anything to attach to the petition to rebut the state's claims with regards to culpable negligence. The petition was late. It was 41 days late, but the defendant can raise claims. I believe that he has viable claims to raise, and the case should go to an evidentiary hearing so that the defendant can do that. This court said in Willis quite clearly, that's not enough. If you have a good-faith reason to believe that the defendant can make a claim in a second-stage pleading, you have to attach an affidavit explaining what those claims are. You can't just say there's other stuff, and that's essentially what we have here. I think that this court has been quite clear in Nolan with respect to putting a claim in the proper form, and now most recently in Willis, was saying, you need to actually make a showing on the record that an evidentiary hearing is warranted. It's not a fishing expedition, and it's not something that can be done based on speculation. I do want to touch on the state's arguments with regard to the sentencing issue. With respect to the merits... Your time has expired, but I'm going to let you briefly address that point. This is not the first brief that's been filed in this case. This is the third appeal. I believe that we can reasonably rely on this court's pronouncements in other cases. I will note that we're arguing that Mr. Brown has received ineffective assistance of counsel at basically every single stage of the proceedings. I think that we have adequately pled prejudice. I think that it was incumbent upon the state, if it wants to defend the court's ruling on other grounds, to raise it in its response, which it did, and then we addressed it in our reply. But to the extent that this court thinks that we somehow forfeited anything in the opening brief, I would urge this court, if it believes that, to allow us to file supplemental briefing on that point. Because, again, Mr. Brown has received ineffective assistance of counsel at every stage of the proceedings. I would hate for him to have to lose a claim because I was ineffective as well. And I'm happy to concede that if that's what's necessary to get additional briefing, Your Honors. Thank you, counsel. Good job on the arguments from both sides. We appreciate your arguments. We'll take this matter under advisement and stand in recess.